Gregory B. NORTON, Jr., a minor, by his next friend, Marian B. Chiles, Individually and on behalf of all others similarly situated

v.

Elliot RICHARDSON, Secretary, Department of Health, Education and Welfare, Individually and in his official capacity.

Civ. No. 72–271–B.

United States District Court,
D. Maryland.

Dec. 22, 1972.

C. Christopher Brown and Michael Berman, Baltimore, Md., for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen., Harland F. Leathers and Bruce E.

Titus, Washington, D. C., George Beall, U. S. Atty., and Jeffrey White, Asst. U. S. Atty., Baltimore, Md., for defendant.

BLAIR, District Judge.

## MEMORANDUM OPINION

This case involves an attempt by plaintiff, Gregory B. Norton, Jr., to establish his right to receive child's insurance benefits under the Social Security Act, 42 U.S.C. § 402(d) after the death of his father, Gregory B. Norton, Sr. Benefits have been denied him by the Secretary of Health, Education and Welfare who found that he failed to meet the requirements of 42 U.S.C. § 416(h)(3)(C)(ii). This section requires that certain illegitimate children, to qualify under the Act as a child of the deceased wage earner, must prove, in addition to paternity, that they were living with or supported by the wage earner on the date of his death. Although Gregory proved he was the son of Gregory Norton, Sr., he failed to convince the Secretary that he had been living with or supported by his father when his father died. Two theories have been advanced in support of Gregory's right to receive benefits. The first is that the Secretary's decision rests on an incorrect interpretation of § 416(h)(3)(C)(ii) and is in error.[1] The second and alternative theory is that if the Secretary's interpretation is correct, § 416(h)(3)(C)(ii) should be held unconstitutional, its operation enjoined, and the Secretary directed by mandamus-like writ to commence payments.[2] Because the latter theory seeks an injunction against the enforcement of a federal statute on constitutional grounds, plaintiff has requested the convocation of a three-judge court. Plaintiff also seeks certification of the case as a class action and a preliminary injunction should the issue of the constitutionality of § 416(h)(3)(C)(ii) be reached.

Both sides have asked for summary disposition of the case, the pertinent facts being agreed upon. Defendant has moved for summary judgment or dismissal for failure to state a cause of action; plaintiff has responded with his own motion for summary judgment. As a preliminary matter, it must be determined which issues, if any, may be resolved by a single judge and which must be referred to a three-judge court for determination. Defendant contends that a three-judge court is not required, there being no substantial constitutional issue, and that judgment should be entered in favor of the Secretary on both claims by this court sitting as a single judge. Plaintiff counters that a three-judge court is required unless this court in its single judge capacity enters judgment in his favor, either because the Secretary's decision was wrong or the statute is unquestionably unconstitutional.

The review of a decision of the Secretary of H.E.W. is normally by a single judge court. Plaintiff is willing for this court to review the Secretary's decision, but only if judgment will be awarded plaintiff and asks that the three-judge court decide the claim if judgment is not to be for plaintiff. The court, however, disagrees with plaintiff that the three-judge court should consider this issue. The review of the Secretary's decision, being an alternative to deciding a constitutional question, must be resolved before the constitutional claim is reached. Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970). Although the three-judge court would have pendent jurisdiction over this claim,[3] the recent authority is

---

1. Jurisdiction for judicial review of the decisions of the Secretary of H.E.W. is provided by 42 U.S.C. § 405(g).

2. Jurisdiction here is based on the general federal question provision of 28 U.S.C. § 1331 and on 28 U.S.C. § 1361, providing jurisdiction in mandamus actions against officers of the United States or its agencies.

3. Turner v. Fouche, 396 U.S. 346, 354, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Florida Lime & Avocado Growers v. Jacobsen, 362 U.S. 73, 80–85, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960); Zemel v. Rusk, 381

that the single judge, and not the three-judge court, should decide the non-constitutional claim. In Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970), the Supreme Court indicated that the preferred procedure for a three-judge court presented with such a claim "may well have been to remand to the single district judge for findings and determination of the statutory claim rather than encumber the district court, at a time when district court calendars are overburdened, by consuming the time of three federal judges in a matter that was not required to be determined by a three-judge court." Three-judge courts after *Rosado* have followed this suggestion and remanded the non-constitutional claim to the single judge for decision prior to their consideration of the constitutional issue. Doe v. Gillman, 347 F.Supp. 483 (N.D.Iowa 1972); Hubert v. Saucier, 347 F.Supp. 152 (N.D.Ga.1972); Linnane v. Betit, 331 F.Supp. 868 (D.Vermont 1971); Saddler v. Winstead, 327 F.Supp. 568 (N.D.Miss.1971); Woolfolk v. Brown, 325 F.Supp. 1162 (E.D.Va. 1971); Doe v. Hursh, 337 F.Supp. 614, 616 (D.Minn.1970). To this court there is no reason for the single judge to first send the non-constitutional claim to the three-judge court before deciding it. Bryant v. Carleson, 444 F.2d 353 (9th Cir. 1971), cert. denied 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971); Kelly v. Illinois Bell Tel. Co., 325 F.2d 148 (7th Cir. 1963); Chicago, Duluth & Georgian Bay Transit Co. v. Nims, 252 F.2d 317 (6th Cir. 1958); Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y.1972); Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481 (D.

Conn.1972). *Contra* Weintraub v. Hanrahan, 435 F.2d 461 (7th Cir. 1970); Fort v. Daley, 431 F.2d 1128 (7th Cir. 1970). In fact, it would be grossly inefficient to send a three-judge court a claim which will only be sent immediately back. This inefficiency is especially apparent if the single judge's decision resolves the case, for there is then no need to convene the three-judge court. *See, e. g.,* Kelly v. Illinois Bell Tel. Co., 325 F.2d 148 (7th Cir. 1963); Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y.1972). Sending all claims to the three-judge court requires that the three judges gather at least to remand, though they may never be required again in the case. *See, e. g.,* Doe v. Hursh, 337 F.Supp. 614 (D.Minn.1970). Even if the three-judge court is eventually required because of the single judge's decision, nothing would be more wasteful than having two federal judges re-do the work one judge has already completed when that work involves a claim not required by statute to be decided by a three-judge court. At a time when the burden of three-judge court procedure rests heavily upon the federal judiciary, there is little need to increase that burden with inefficiency. For this reason, the review of the Secretary's decision shall be done by this court alone and shall not be sent to a three-judge court.

In reviewing the Secretary's decision, the court notes that plaintiff does not contest the supporting facts upon which the decision rests. Instead, plaintiff attacks the conclusion drawn from these facts, contending that they are sufficient to meet the requirement of § 416(h)(3)(C)(ii) that the deceased wage earner have lived with or support-

---

U.S. 1, 5–7, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Flast v. Cohen, 392 U.S. 83, 88–91, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Sterling v. Constantin, 287 U.S. 378, 393–394, 53 S.Ct. 190, 77 L.Ed. 375 (1932). *But cf.* Perez v. Ledesma, 401 U.S. 83, 86–87, 91 S.Ct. 674, 27 L.Ed. 2d 701 (1971); New York Central Securities Corp. v. United States, 287 U.S. 12, 28–29, 53 S.Ct. 45, 77 L.Ed. 138 (1932); Powell v. United States, 300

U.S. 276, 289–290, 57 S.Ct. 470, 81 L.Ed. 643 (1937); Pittsburgh & W. Va. Ry. Co. v. U. S., 281 U.S. 479, 488, 50 S.Ct. 378, 74 L.Ed. 980 (1930); Hobson v. Hansen, 256 F.Supp. 18, 21 (D.C.1969); Landry v. Daley, 280 F. Supp. 929, 937 (N.D.Ill.1967); Jehovah's Witnesses in State of Wash. v. King County Hosp., 278 F.Supp. 488, 496–497 (W.D.Wash.1967), aff'd. 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968).

ed his illegitimate child on the date of his death. The essential facts relevant to § 416(h)(3)(C)(ii) can, therefore, be briefly summarized. Gregory Norton, Jr. was born out of wedlock in 1964 to Gregory Norton, Sr., then 16, and Lauri Marie Brown, then 14. Both Gregory Norton, Sr. and Lauri Marie Brown were high school students living at home. They never married, nor did they ever live together. From the time of his birth to the present, Gregory Norton, Jr. has lived with and been under the care of his maternal grandmother, Mrs. Marian B. Chiles. When Gregory Norton, Jr. was born, Gregory Norton, Sr. apparently contributed $6.00 and some gifts of clothing and other baby habiliments, but never actually undertook the support of the child, being an unemployed student at the time. In February of 1965, Gregory Norton, Sr. entered the Army. He had at this point never lived with his son. On May 19, 1966, at age 19, Gregory Norton, Sr. was killed while serving in Vietnam. Prior to his death, Gregory Norton, Sr. attempted to authorize a child's military allotment which would have provided the child with regular support. Whether because of military red tape or some other reason, on the date of his death he had failed to complete the procedure which would have initiated the allotment payments. While it appears evident that at some point Gregory Norton, Sr. did intend to begin supporting his son, it is undeniable that at the time of his death such support had yet to commence.

Plaintiff does not maintain that § 416(h)(3)(C)(ii) was satisfied by a showing that Gregory Norton, Sr. was living with his son on the date of his death. Being in Vietnam, Gregory Norton, Sr. was obviously not living with Gregory Norton, Jr. and there is absolutely no evidence to suggest that Gregory Norton, Sr. ever attempted or even intended to live with his illegitimate child. Plaintiff's argument is that Greg-

ory Norton, Sr.'s attempt to support his son, though admittedly unsuccessful, was all that had to be proven under a proper reading of the statute for Gregory Norton, Jr. to qualify for benefits and that, for this reason, the Secretary's conclusion that Gregory Norton, Jr. was not supported by his father on the date of his death is not based on substantial evidence[4] and is erroneous. What plaintiff argues is that an applicant is not disqualified from receiving benefits by § 416(h)(3)(C)(ii) if the deceased did all that could reasonably be expected of him to live with or support the child. In support of this proposition, plaintiff cites numerous cases liberally interpreting § 416(h)(3)(C)(ii) along this line. *See* Bridges v. Secretary, C.C.H. Unempl. Ins. Rep., ¶ 16,480 (E.D.N.Y.1971); Crisp v. Richardson, C.C.H. Unempl. Ins. Rep., ¶ 16,612 (W.D.N.C.1972); Mobley v. Richardson, C.C.H. Unempl. Ins. Rep., ¶ 16,439 (W.D.N.C.1971); Jackson v. Richardson, C.C.H. Unempl. Ins. Rep., ¶ 16,767 (S.D.W.Va.1972); Wagner v. Finch, 413 F.2d 267 (5th Cir. 1969).

While this court agrees that the provisions of the Social Security Act should be liberally construed in favor of coverage, even a liberal construction of § 416(h)(3)(C)(ii) would not extend coverage to Gregory Norton, Jr. under the precedents plaintiff relies on. In each of these cases, there had been some regular and continuous "living with" or "support by" the wage earner which for some unavoidable reason was interrupted on the date of the wage earner's death. For example, in Bridges v. Secretary, C.C.H. Unempl. Ins. Rep., ¶ 16,480 (E.D.N.Y.1971) the wage earner had been living with the mother and his illegitimate children in New York and had supported them from his wages. Tuberculosis first hospitalized him and then caused him to spend large amounts of his time in North Carolina caring for his

---

4. 42 U.S.C. § 405(g) provides that the Secretary's finding of any fact—i. e. whether Gregory Norton, Jr. was supported by his father on the date of his death—is conclusive if supported by "substantial evidence."

health. He was forced to live on a Veterans Administration pension. Despite all of this, he regularly visited the mother and children. He died in North Carolina four months after having spent Thanksgiving with the family. The court ruled that the separation was caused by circumstances beyond the wage earner's control and that his children would not, for this reason, be barred from receiving benefits.

There is nothing in the record to indicate that Gregory Norton, Sr. had regularly or continuously lived with or supported his son and was prevented from so doing on the date of his death by circumstances beyond his control. The only evidence of any support at all is the small gifts provided when the baby was born and the attempt to establish a military pay allotment. When faced with evidence of only sporadic and insignificant contributions of support, the court found in Johnson v. Finch, C. C.H. Unempl. Ins. Rep., ¶ 16,646 (N.D. Tex.1972) that the wage earner had not been supporting his illegitimate child, as contemplated by the statute. It follows *a fortiori* that a single, insignificant contribution does not qualify either. Although plaintiff argues that Gregory Norton, Sr. had done all within his power to support his illegitimate child, this is a conclusion the court cannot reach. Gregory Norton, Sr. made no real overture of support until he attempted to take out the military pay allotment and evidence is lacking to support the diligence of his effort in that regard. All that can be said conclusively about his attempt to support his son is that it failed and his support never began. An unsuccessful attempt to do an act required by the Social Security Act is not compliance. Moore v. Richardson, 345 F.Supp. 75 (W.D.Va. 1972). The Secretary's decision must, therefore, be affirmed.

Having found the Secretary's decision to be correct, the court must now consider plaintiff's constitutional claim. Plaintiff contends that § 416(h)(3)(C)

(ii) violates the equal protection guarantee implicit in the Fifth Amendment of the Constitution by impermissibly discriminating against a certain class of illegitimate children. On the basis of the Supreme Court's decision in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the court is of the opinion that this claim raises a substantial constitutional issue which must, under 28 U.S.C. § 2282, be resolved by a district court of three judges. This court shall request the Chief Judge of this Circuit to convene a three-judge court to decide the constitutionality of the challenged statute. The request for certification as a class action and for a preliminary injunction shall be referred to the three-judge court.

Accordingly, the Secretary is entitled to summary judgment in his favor on the issue of whether his decision that Gregory Norton, Jr. was not entitled to child's insurance benefits was supported by substantial evidence.