William HODGES, Jr., et al., Individually and on behalf of all others similarly situated

v.

Caspar W. WEINBERGER, Secretary, Department of Health, Education and Welfare.

John HARVEY, Individually and on behalf of all others similarly situated

v.

Caspar W. WEINBERGER, Secretary, Department of Health, Education and Welfare.

Civ. A. Nos. M–74–838 and M–74–1229.

United States District Court, D. Maryland.

March 7, 1977.

Dennis M. Sweeney, Gordon S. Berman, and C. Christopher Brown, Baltimore, Md., for plaintiffs.

Jervis S. Finney, U. S. Atty., John W. Sheldon, Asst. U. S. Atty., and Robert Varnum, Office of General Council, Social Security Administration, Baltimore, Md., for defendant.

Before WINTER, Circuit Judge, and HARVEY and MILLER, District Judges.

## OPINION AND ORDER

JAMES R. MILLER, Jr., District Judge.

### I

### *Background*

Invoking jurisdiction under 42 U.S.C. § 405(g), 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 5 U.S.C. § 701, *et seq.*, plaintiffs in these cases have challenged the constitutionality of one section of the Social Security Act, namely 42 U.S.C. § 1383(a)(2),[1] which in turn refers to 42 U.S.C. § 1382(e)(3)(A).[2] Under these sections, recipients of Supplemental Security Income

---

1. 42 U.S.C. § 1383(a)(2) provides:

"(2) Payments of the benefit of any individual may be made to any such individual or to his eligible spouse (if any) or partly to each, or, if the Secretary deems it appropriate to any other person (including an appropriate public or private agency) who is interested in or concerned with the welfare of such individual (or spouse). Notwithstanding the provisions of the preceding sentence, in the case of any individual or eligible spouse referred to in section 1382(e)(3)(A) of this title, the Secretary shall provide for making payments of the benefit to any other person (including an appropriate public or private agency) who is interested in or concerned with the welfare of such individual (or spouse)."

The second sentence gives rise to the dispute here.

2. 42 U.S.C. § 1382(e)(3)(A) provides:

"(3)(A) No person who is an aged, blind, or disabled individual solely by reason of disability (as determined under section 1382c(a)(3) of this title) shall be an eligible individual or eligible spouse for purposes of this subchapter with respect to any month if such individual is medically determined to be a drug addict or an alcoholic unless such individual is undergoing any treatment that may be appropriate for his condition as a drug addict or alcoholic (as the case may be) at an institution or facility approved for purposes of this paragraph by the Secretary (so long as such treatment is available) and demonstrates that he is complying with the terms, conditions, and requirements of such treatment and with requirements imposed by the Secretary under subparagraph (B)."

(SSI) disability benefits who are classified as "medically determined" drug addicts or alcoholics must receive their monthly checks through a representative payee appointed to act in their behalf.

Plaintiffs, who are either drug addicts or alcoholics, assert that they are financially responsible; that payment to a person other than themselves would increase the danger of delay, non-receipt, or misuse of their respective SSI payments; that their independent management of their SSI payments is therapeutic to them; and that, if given the opportunity, they could establish these contentions by evidence to be produced in an administrative hearing. Plaintiffs further assert that unless they consent to the designation of some one to act in such a capacity, they are faced with automatic termination of their SSI benefits.[3]

Plaintiffs allege that the mandatory appointment of a representative payee for all "medically determined drug addicts or alcoholics" establishes, in violation of their due process rights, an unconstitutional irrebuttable presumption that all such "medically determined drug addicts or alcoholics" are incapable of handling their own SSI benefits. Such a presumption, the plaintiffs assert, is not necessarily or universally true. Further they allege that this conclusive statutory presumption creates, in violation of their equal protection rights, two irrationally conceived classes of SSI beneficiaries; one which may contest the need for a representative payee[4] and another which may not. Because the plaintiffs asked for declaratory relief and an injunction restraining enforcement of the allegedly unconstitutional statute, this three-judge

court was designated on February 24, 1975, pursuant to 28 U.S.C. § 2282, to hear and decide these cases.[5]

## II
### Facts

In *Hodges v. Weinberger*, the original plaintiff, William Hodges, who had been a medically determined alcoholic, has now been determined to be not disabled. That determination has been appealed in a separate civil action under 42 U.S.C. § 405(g). His complaint against the mandatory representative payee requirement is claimed to be moot because he is no longer immediately subject to the mandatory representative payee requirement.

On October 29, 1976, Claude Hamiel was allowed to intervene as a plaintiff in *Hodges v. Weinberger*.[6] Intervenor Hamiel was found to be disabled, and his benefits were made subject to the representative payee requirement applicable to alcoholics. The imposition of the representative payee requirement was appealed and affirmed by the Appeals Council. This present action is now intervenor Hamiel's appeal under 42 U.S.C. § 405(g). Hamiel does not contest the Secretary's finding that he is a medically determined alcoholic; he challenges only the statutorily required appointment of a representative payee.

When *Harvey v. Weinberger* was originally filed shortly after *Hodges*, it raised the same legal issues, relating to "medically determined" drug addicts, concerning the mandatory representative payee requirement of § 1383(a)(2), as *Hodges* had raised relating to alcoholics. Therefore, the two cases were consolidated. At that time Har-

---

**3.** To date, no named plaintiff has had SSI payments suspended for failure to comply with the representative payee requirement.

**4.** Under 42 U.S.C. § 1383(a)(2) (first sentence), the Secretary may appoint a representative payee for any individual if the Secretary deems it appropriate after individualized consideration. This statutory mandate is implemented through the regulations, 20 C.F.R. § 416.00 *et seq.*, claims manual provisions, and technical letters.

**5.** This case was instituted prior to August 12, 1976, the effective date of P.L. 94–381, which repeals the requirement of a three-judge court in cases such as this.

**6.** Verna Beck has also moved to intervene in *Hodges v. Weinberger*. Her disability payments were made subject to the representative payee requirement. She has not exhausted her administrative remedies. Her motion will be denied for failure to exhaust her administrative remedies. *See Salfi, infra.*

vey's disability resulted in part.from a long history of drug addiction. Recently Harvey's disability was reviewed, and he was found to be disabled independently of his drug abuse. He is, therefore, no longer immediately subject to the mandatory representative payee requirement. There has been no motion to intervene in the *Harvey v. Weinberger* case.

On February 18, 1975, two classes of SSI recipients subject to the mandatory representative payee requirement were conditionally certified: the one in *Hodges* consists of medically determined alcoholics;[7] the other in *Harvey* consists of medically determined drug addicts.[8]

### III

#### *Jurisdiction*

These consolidated cases were filed, classes conditionally certified, and a three-judge court convened prior to the decision of the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). That case made clear that jurisdiction here does not lie under 28 U.S.C. § 1331. *Id.* at 753, 756–762, 95 S.Ct. 2457. *Salfi* also raised, but left unanswered, questions concerning the propriety of convening a three-judge court to adjudicate the issues raised under 42 U.S.C. § 405(g). *Id.* at 763, n. 8, 95 S.Ct. 2457. Furthermore, *Salfi* held that it was improper to certify a class action brought under the purported jurisdictional umbrella of 42 U.S.C. § 405(g) where, as here, there had been no allegation that the members of the class had exhausted their administrative remedies. *Id.* at 753, 764, 95 S.Ct. 2457. Finally, the Court in

*Salfi* noted that 42 U.S.C. § 405(h) precludes recourse to other jurisdictional grounds for challenging the actions of the Secretary of the Department of Health, Education and Welfare without exhausting administrative remedies as "to any 'action' seeking 'to recover on any [Social Security] claim'—irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his non-discretionary applications of allegedly unconstitutional statutory restrictions." *Id.* at 762, 95 S.Ct. at 2465.

As a result of *Salfi*, there is some doubt that a three-judge court was properly convened (*but see* dissent of Mr. Justice Stevens, *Norton v. Mathews*, 427 U.S. 524, 533–537, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976)). It is conceded by all parties, however, that this court, either as a single-judge court or as a three-judge court, has subject matter jurisdiction under 42 U.S.C. § 405(g) over the merits of the legal issues raised by intervenor Claude Hamiel relating to the constitutionality of § 1383(a)(2). We determined, therefore, with the consent of all counsel, to proceed to the merits of the constitutional arguments without initially resolving the ". . . difficult and perhaps close jurisdictional arguments" of whether this case is properly one for consideration by a three-judge, as opposed to a single-judge, court. *Norton v. Mathews*, 427 U.S. 524, at 530, 96 S.Ct. 2771, at 2774, 49 L.Ed.2d 672 (1976). If the jurisdiction of this court is assumed, but not decided, and the constitutional issues upon examination are resolved in favor of the Secretary, the jurisdictional question need not be decided. *Id.*

---

7. The *Hodges* class was conditionally certified as

"all persons who are recipients of Supplemental Security Income monthly benefits under Title XVI of the Social Security Act and who have been informed, or will be informed during the pendency of this federal action, by defendant that defendant considers them to be 'medically determined alcoholics' and who as a result of such determination are mandatorily required to have another individual, a representative payee, receive and disburse their monthly Supplemental Security Income benefit checks."

8. The *Harvey* class was conditionally certified as

"all persons who are recipients of Supplemental Security Income monthly benefits under Title XVI of the Social Security Act and who have been informed, or will be informed during the pendency of this federal action, by defendant that defendant considers them to be 'medically determined drug addicts' and who as a result of such determination are mandatorily required to have another individual, a representative payee, receive and disburse their monthly Supplemental Security Income benefit checks."

Because the claim of Hamiel is not moot, it is also unnecessary to decide whether the claims of *Hodges* and *Harvey* are moot or whether their claims are "capable of repetition, yet evading review." [9] For the purposes of this proceeding, in view of the fact that jurisdiction to decide the basic constitutional questions at issue unquestionably exists, and Hamiel's suit is not moot, we shall address the claims of *Hodges* and *Harvey* on their merits.

### IV

#### Due Process

Plaintiffs' due process arguments derive from the doctrine of irrebuttable presumptions which has found expression in *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), and *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). While recognizing that the applicability of the doctrine of irrebuttable presumptions has been seriously eroded by the holding in *Weinberger v. Salfi, supra*, plaintiffs nevertheless urge that the challenged statute creates an improper and untrue irrebuttable presumption that all "medically determined" drug addicts and alcoholics are incapable of responsibly handling their own funds. Acknowledging that *Salfi* precluded the use of the doctrine of irrebuttable presumptions as a ". . . virtual engine of destruction for countless legislative judgments . . ." [10] relating to the class of persons to be considered eligible to receive monetary benefits under social welfare legislation, the plaintiffs have attempted to distinguish the *Salfi* type classification from the type involved here which they contend is not a legislative eligibility requirement. Plaintiffs argue that Congress was concerned here, not with eligibility standards for recipients of funds from the public treasury, but instead with the ability of individual drug addicts and alcoholics to handle their funds responsibly and that, being so concerned, Congress could not conclusively presume incapability for a small sub-class of alcoholics and drug addicts simply from the fact that they had been "medically determined" to be such alcoholics and drug addicts.

While there may be merit in the abstract in the suggestion of the plaintiffs that there is a difference between an eligibility requirement under a social welfare program on the one hand and a presumed fact relating to an evidentiary determination of ability or inability to handle responsibly funds to be paid to an eligible recipient of social welfare funds on the other hand, we believe that the intent and effect of the challenged statute is to create an eligibility requirement rather than a conclusive presumption as to an evidentiary fact.

The plain legislative goal of the statutory scheme is to require those alcoholics and drug addicts, who are disabled and by definition cannot perform substantial gainful activity, 42 U.S.C. § 1382a(c)(3), but whose disability would not exist except for the fact of their alcoholism or drug addiction, as the case may be, to undergo rehabilitative treatment, 42 U.S.C. § 1382(e)(3)(A), in the hope that such treatment will eliminate the precipitating cause of the disability and allow that person to be restored to the work force and removed from the public dole. This class of alcoholics and drug addicts, i. e., those who would not be disabled but for their alcoholism or drug addiction, is the one for which strict supervision is or may be productive in providing incentives, mandatory or otherwise, to participate in the rehabilitative efforts envisioned by the statute and is the class for which a representative payee is mandatory. 42 U.S.C. § 1383(a)(2); 20 C.F.R. § 416.981.

As the Court intimated in *Salfi*, in challenging the denial or threatened denial of

---

**9.** *Cf. Southern Pacific Terminal Co. v. I. C. C.*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

**10.** *Weinberger v. Salfi*, 422 U.S. 749 at 772, 95 S.Ct. 2457 at 2470, 45 L.Ed.2d 522.

the benefits of social welfare legislation to them in their peculiar circumstances, the plaintiffs are required to show one of two things: (1) that ". . . they meet the specified requirements" or (2) ". . . failing in this effort . . . that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test." 422 U.S. at 772, 95 S.Ct. at 2470. The pertinent requirements here are that "medically determined" drug addicts and alcoholics undergo rehabilitative treatment, 42 U.S.C. § 1382(e)(3)(A), and have a representative payee to whom their benefits will be paid, 42 U.S.C. § 1383(a)(2); 20 C.F.R. § 416.981. In the absence of the establishment of some impediment placed by Congress upon the ability of the plaintiffs to prove by evidence that they meet the tests for eligibility for benefits under the SSI program here involved, the doctrine of irrebuttable presumptions has no applicability. *Weinberger v. Salfi, supra.*

## V

### *Equal Protection*

■ It is now well settled that a classification established by Congress in dealing ". . . with a withholding of a non-contractual benefit under a social welfare program such as [Social Security] . . ." is invalid under the Due Process Clause of the Fifth Amendment ". . . only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi, supra* at 768, 95 S.Ct. at 2468, quoting *Flemming v. Nestor*, 363 U.S. 603 at 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). In the area of social welfare, a statutory classification which meets the test enunciated in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), in relation to the Equal Protection Clause of the Fourteenth Amendment that the classification must be rationally based and free from invidious discrimination also is consistent, in the case of a federal statute, with the due process requirement of the Fifth Amendment. *Wein-*

*berger v. Salfi, supra* at 770, 95 S.Ct. 2457; *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

Referring to the standards of legislative reasonableness set out in *Dandridge v. Williams, Richardson v. Belcher*, and others, the Court said in *Salfi*:

"Under those standards, the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in *Mourning* [*Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)]. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule."

422 U.S. at 777, 95 S.Ct. at 2472.

Most recently, in *Mathews v. deCastro*, 429 U.S. 181 at 185, 97 S.Ct. 431 at 434, 50 L.Ed.2d 389 (1976), the Supreme Court again summarized the applicable law as follows:

"The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established. Governmental decisions to spend money to improve the general public welfare in one way and not another are 'not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.' *Helvering v. Davis*, 301 U.S. 619,

640, 57 S.Ct. 904, 908, 81 L.Ed. 1307. In enacting legislation of this kind a government does not deny equal protection 'merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491.

"To be sure, the standard by which legislation such as this must be judged 'is not a toothless one,' *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651. But the challenged statute is entitled to a strong presumption of constitutionality. 'So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket.' *Jefferson v. Hackney*, 406 U.S. 535, 546–547, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285."

■ At issue here is a classification by Congress of those persons who, but for their "medically determined" drug addiction and alcoholism, would not be disabled and therefore not be eligible for SSI benefits at all. In reference to each member of that class of persons, Congress has, in effect, conditioned payments of SSI benefits upon the mandatory appointment of a representative payee and upon participation in an approved treatment program.[11]

The original House▪bill did not contain the challenged section, *see* H.R. 1, § 301, 92d Cong., 2d Sess.; H.R.Rep.No. 92–231 (1971), 1972 U.S.Code Cong. & Admin.News at p. 5135, although the House Committee did express the belief that "those people who are disabled, in whole or in part, as a

result of the use of drugs or alcohol should not be entitled to benefits under this program unless they undergo appropriate, available treatment in an approved facility, and the bill so provides." *Id.* The original Senate bill established a comprehensive, flexible program to deal with drug and alcohol abusers. *See, e. g.,* Sen.Rep.No. 92–1230, at 303, 939. In conference, the Senate withdrew its proposals relating to drug addicts and alcoholics and the current law was agreed upon in its present form. The Conference Committee report, significantly, states that "[m]aintenance payments [on behalf of "medically determined" alcoholics and drug addicts] could be made *only as part of a treatment and rehabilitation program.*" (Emphasis supplied). H.R.Conf. Rep.No. 92–1605 (1972), 1972 U.S.Code Cong. & Admin.News, pp. 5399–400.

As discussed in Part IV of this Opinion, the statutory language conveys the clear implication that Congress intended to maximize the incentives for the participation by persons, who would not be SSI recipients but for their alcoholism or drug addiction, in rehabilitative programs through the requirement of a mandatory representative payee. Such an interpretation of the statute is supported by the above quoted excerpt from the Conference Committee Report. In addition, it does not require much prescience to conclude that Congress was "aroused by the possibility of an abuse which it legitimately desired to avoid," *Salfi*, 422 U.S. at 777, 95 S.Ct. at 2472, that is that individuals with drug or alcohol habits, who were disabled as a result of those habits, might use the Federal funds being provided them as a part of a treatment and rehabilitation program to continue the support of the very habits that the program was being conducted to cure.[12]

---

11. *See* Part IV of this Opinion and Order, *supra; see also* H.R.Rep.No. 92–231 (1971), 1972 U.S.Code Cong. & Admin. News, p. 5135.

12. Subsequent legislative history justifies this conclusion.

Congressman Vanik, discussing the SSI representative payee requirement for disabled alcoholics and addicts, stated:

"It seems obvious that original congressional intent was twofold: primarily to prevent individuals with drug or alcohol habits from using Federal funds to support those habits; and second to encourage those individuals to undergo treatment in rehabilitation facilities and programs."
122 Cong.Rec. H3719 (daily edition, April 30, 1976).

Congress clearly could rationally have concluded that the payment of sustenance funds should be made to representative payees for that class of persons "to protect against [the] occurrence" of the potential abuse "and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." *Salfi*, 422 U.S. at 777, 95 S.Ct. at 2473.[13]

The challenged statute, we conclude, meets all constitutional tests.

## VI

### *Class Action*

 Having determined that the merits of the constitutional assault on 42 U.S.C. § 1383(a)(2) favor the defendant, it remains to determine the effect of this decision in view of the earlier conditional certification of these consolidated cases as class actions. Since *Salfi* made it clear that classes may not properly be certified under Rule 23, F.R.Civ.P., in an action brought pursuant to 42 U.S.C. § 405(g) where, as here, no allegation or showing existed that the members of the putative class had previously exhausted administrative remedies, 422 U.S. at 764, 95 S.Ct. 2457 and since § 405(g) is the only undisputed jurisdictional base for our deciding the merits of the requirement of § 1383(a)(2) for the mandatory representative payee, we believe it appropriate to withdraw the previous order conditionally certifying classes in these consolidated cases.

## VII

Accordingly, it is this 7th day of March, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion of Verna Beck to intervene is denied.

2. That the Orders certifying two classes in these cases are rescinded, and the complaints as they concern the classes are dismissed.

3. That the motion of plaintiffs for summary judgment is denied.

4. That the motion of the defendant for summary judgment is granted.

---

**13.** The Senate Bill would have allowed payment directly to the recipient for treatment purposes. In conference, however, that approach was not adopted. *See* Sen.Rep.No. 92–1230, at 303 (1972); H.R.Conf.Rep.No. 92–1605 (1972), 1972 U.S.Code Cong. & Admin.News at p. 5400.